UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSICA PETERSON,<br><br>                Plaintiff,<br><br>-against-<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION, and JOSEPH SCARMATO, Principal of Tottenville High School,<br><br>                Defendants. | COMPLAINT<br><br>ECF CASE<br><br>18 CV \_\_\_\_<br><br>JURY TRIAL DEMANDED |

Plaintiff JESSICA PETERSON, by her attorneys, GLASS KRAKOWER LLP, as and for her Complaint against Defendants, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action against her employer New York City Department of Education for employment discrimination based on disability arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.

2. Plaintiff also brings this action against all defendants pursuant to 42 U.S.C. Section 1983, the New York Civil Service Law Section 75-b (hereinafter "CLS § 75-b"), and for intentional infliction of emotional distress, as a result of maltreatment and retaliatory actions taken against her after she raised matters of a public concern while a teacher and union chapter leader employed by Defendant.

1

3. Plaintiff seeks economic, compensatory damages and punitive damages to the extent allowable by law, and other appropriate legal and equitable relief pursuant to federal and state law.

## PARTIES

4. At all times hereinafter mentioned, Plaintiff was a teacher and a resident of the City and State of New York, County of Staten Island.

5. At all times relevant herein, Plaintiff was a "public employee" of Defendants within the meaning of New York State Civil Service Law § 75-b(1)(b).

6. At all times hereinafter mentioned, Defendant New York City Department of Education ("NYCDOE") was a "public employer" within the meaning of CLS § 75-b.

7. At all times hereinafter mentioned, Defendant Joseph Scarmato was the Principal of Tottenville High School, a school within the NYCDOE in Staten Island, New York.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 as this matter involves federal questions.

9. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the primary actions took place in schools within the Eastern District of New York.

10. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

11. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

12. Plaintiff previously served a Written Verified Notice of Claim on Defendants regarding his state law claims, which has not yet been adjusted.

13. Plaintiff received a right to sue letter from the EEOC dated December 21, 2017, attached hereto as Exhibit A.

## STATEMENT OF FACTS

### *A. Background*

14. From 1995 until present, Defendant NYCDOE employed Plaintiff as a full-time English Teacher.

15. Plaintiff worked at Tottenville High School in Staten Island, New York from 1995 to 1996, and then again from 2004 to present, until she was reassigned from her duties in June 23, 2017. Plaintiff worked at the High School of Telecommunication Arts and Technology from 1996 to 2004.

16. While at the High School for Telecommunication Arts and Technology, Plaintiff suffered a line of duty injury ("LODI") in 2002, when two students injured her during a conflict resolution meeting. As a result of the injury, Plaintiff was diagnosed with a herniation in her neck and mid thoracic; a bulging disc in her lower lumbar; soft tissue damage to both hips; and two dislocated rib tips.

17. In May 2007, Plaintiff exacerbated the injuries she suffered during 2002 while in school.

18. In June 2007, Plaintiff made an informal request with Catherine Burgos, her former Assistant Principal, for reasonable accommodations due to her injuries. Specifically, she requested exclusive use of a classroom so that she would not have to carry her belongings back and forth and so as to avoid hall-passing. AP Burgos denied Plaintiff's request.

19. As a result of AP Burgos' denial, in or around August 2007, Plaintiff submitted a formal request for reasonable medical accommodations.

20. Defendant NYCDOE granted Plaintiff reasonable accommodations in or around September 2007, including but not limited to exclusive use of a classroom C-212A; secured locked cabinets to avoid carrying teaching and/or testing materials and/or supplies; delivery of proctoring materials for exams; to avoid hall-passing; and elevator access.

### B. *Union Activity and Retaliation*

21. On or about June 2, 2015, Plaintiff was elected United Federation of Teachers ("UFT") Chapter Leader for Tottenville High School.

22. Between September 2015 and the filing of this Complaint, Plaintiff has filed approximately thirty (30) grievances on behalf of her union members.

23. Following her appointment as Chapter Leader, as per the UFT-NYCDOE Collective Bargaining Agreement ("CBA"), Plaintiff was now mandated to have two free periods per day to handle union business.

24. On or about June 11, 2015, Principal Scarmato and AP of Organization Clifford Bloom announced that they would have Plaintiff vacate her room for two periods at the end of the day since she became the union chapter leader and was not teaching classes in her room, thereby revoking the accommodation for exclusive use of a classroom that Plaintiff had been granted. Additionally, Plaintiff learned that the UFT office, which had always been on the first floor, was now being moved to the basement, thereby causing additional difficulty for Plaintiff.

25. As a result of this revocation of her accommodation, Plaintiff was forced to relocate to whatever empty classroom and/or office space was available and close-by at the time, resulting in Plaintiff being forced to engage in hall-passing, putting her at substantial risk for re-injury.

26. On or about October 6, 2015, Plaintiff, as union Chapter Leader, filed a grievance on behalf of the teachers at her school regarding a violation of their contractually-mandated professional administrative period.

27. On or about October 7, 2015, Plaintiff, as union Chapter Leader, filed a grievance regarding Principal Scarmato's improper creation of an administrative position—the 9th grade advisory position—at the school. Specifically, Plaintiff alleged that the creation of this position was in contravention to the union contract because the administration failed to have a School-Based Option ("SBO") vote.

28. On or about November 13, 2015, Plaintiff filed a grievance against her administration based on a new requirement by the administration that some teachers report to the school on or around 7:00 am, thereby resulting in these teachers working before their collectively-bargained work hours.

29. On July 1, 2016, Plaintiff learned that she won two major union arbitration victories on behalf of her members relating to the aforementioned October 6 and 7, 2015 grievances.

30. The first victory related to Morning Duty, which was a direct violation of a single-session school. Specifically, the principal was requiring staff members to be present prior to the official start of the school day, in contravention of their official work hours.

31. The second victory was a ruling that Principal Scarmato created a 9th Grade Advisor position in contravention of proper procedure.

32. On or about July 6, 2016, Plaintiff received a call from her UFT District and Borough Representatives, Debra Penny and Donna Coppola, informing her that Principal Scarmato contacted the NYCDOE Office of Labor Relations alleging professional misconduct against her due to Plaintiff informing members of the aforementioned arbitration victories.

### C. Hostile Work Environment and Retaliation During the 2016-17 School Year

33. On or about September 7, 2016, Plaintiff was informed by AP Bloom that she had to resubmit all of her medical documentation to NYCDOE Medical to continue receiving her accommodations.

34. On or about September 9, 2016, Plaintiff requested a meeting with Principal Scarmato, where she complained that her accommodations were not being met. In response, Principal Scarmato informed Plaintiff that she had to resubmit her medical documentation for review. During the meeting, Plaintiff explained that she was in a lot of pain due to her injuries and was engaged in labored breathing, and requested that Principal Scarmato continue honoring her accommodations while she attempted to gather all of the requested documentation. During this meeting, Plaintiff informed Principal Scarmato that she would consider seeking legal representation due to the improper revocation of her accommodations.

35. Notably, this was the first time that Plaintiff was asked to resubmit her medical documentation—which constituted hundreds of pages—since 2007. Upon information and belief of Plaintiff, neither AP Bloom nor Principal Scarmato had the authority to request that Plaintiff resubmit her medical documentation.

36. On or about September 10, 2016, Principal Scarmato removed additional existing accommodations previously granted to Plaintiff, referencing "school reorganization" as the justification. Specifically, Plaintiff's schedule was modified so that her teaching periods and prep periods were no longer consecutive. The result was that she had to repeatedly vacate her classroom throughout the day, rather than just the last two periods of the day. Furthermore, Plaintiff was now forced to take her belongings and teaching materials with her during her prep periods. Notably,

approximately thirty (30) teachers had exclusive use of their own classrooms during the 2016-2017 school year.

37. Following Plaintiff's conversation with her principal on September 9, 2016, due to having to carry her belongings and classroom materials, Plaintiff re-aggravated her lower lumbar injury, in that it became a severe herniation.

38. In or around mid-September 2016, Plaintiff provided information to her union regarding improper class sizes at her school, which resulted in her union filing a grievance.

39. On or about October 7, 2016, Plaintiff suffered another line of duty injury when a student crashed into her left side while she was in the hallway. As a result, Plaintiff was not able to support her own weight while walking and requested line of duty injury leave to recuperate and care for herself, pursuant to her medical providers' recommendation. However, Defendants denied her leave request.

40. Plaintiff's medical condition thereafter worsened and she required, sought, and received medical treatment for aggravation of her existing medical conditions and new injuries, including bulging and herniated discs, pain, tingling, and numbness in Plaintiff's extremities.

41. In or around the week October 9-15, 2016, Plaintiff learned, after speaking with Glenn Darien, a Supervisor in the Division of Human Resources, that her medical accommodations were not currently under review nor was the case open, meaning that AP Bloom's and Principal Scarmato's requests that Plaintiff resubmit her medical documentation were made without cause or authority.

42. Despite learning this information from Mr. Darien, Plaintiff resubmitted her medical documentation per her administration's request and due to sustaining new injuries.

43. During this same week, Plaintiff reported the discrimination, harassment and retaliation she was experiencing to several different administrative agencies, including the Office of Special Investigations ("OSI"), the Special Commissioner of Investigation ("SCI"), the U.S. Equal Employment Opportunity Commission ("EEOC"), the NYCDOE Office of Equal Opportunity ("OEO"), the Office of the Superintendent, and her union.

44. Plaintiff repeatedly, throughout the 2016-17 school year, made written and verbal requests for reinstatement of her previous accommodations and new accommodations for her new injuries to Defendants.

45. On or about November 16, 2016, Plaintiff reported to DOE medical for a medical examination pursuant to her accommodation requests. Notably, when she arrived, Plaintiff learned that her examiner did not have any of the new medical documentation that Plaintiff had submitted, and only had medical documentation up until 2007. Additionally, Plaintiff was shocked to learn that the medical examiner was unfamiliar with the word "protrusion" and lacked a basic understanding of Plaintiff's medical records.

46. On or about December 12, 2016, Plaintiff received a letter from Defendants informing her that all medical accommodations were denied and not medically warranted, disregarding the recommendations of Plaintiff's medical providers. No explanation was given for these findings.

47. This same day, Plaintiff also received a disciplinary letter from her administration.

48. On or about February 10, 2017, Principal Scarmato initiated an improper, school-based investigation ("SBI") against Plaintiff, alleging that Plaintiff took pictures of students in someone else's classroom. This investigation resulted in a disciplinary letter to Plaintiff's file

substantiating the allegation, despite an acknowledgment by Principal Scarmato that he had no direct proof that Plaintiff engaged in the alleged actions.

49. Following the aforementioned SBI against Plaintiff, on or about February 17, 2017, Plaintiff received a disciplinary letter from her administration.

50. On or about February 27, 2017, Plaintiff applied for intermittent Family Medical Leave Act ("FMLA") leave.

51. On or about February 28, 2017, based on a directive from her union and pursuant her role as a union Chapter Leader, Plaintiff filed a complaint against her school administration with SCI alleging attendance manipulation, grade changing and credit manipulation.

52. On or about March 22, 2017, Defendants denied Plaintiff's request for FMLA leave, stating that she had already used too many sick days for the year. Upon information and belief of Plaintiff, other faculty members had been approved for FMLA leave despite having far more absences in the school year than Plaintiff.

53. In or around March or April 2017, Defendants retaliated against Plaintiff for her requests for accommodation by suddenly attacking her pedagogy and work performance. Plaintiff's administration accused Plaintiff of pedagogical deficiencies that were unsupported by evidence, and when Plaintiff asked questions regarding her administrators' purported concerns with her pedagogy, she received no response.

54. On April 19, 2017, Plaintiff learned that the grievances she filed or had filed by the union regarding improper class size and the improper professional administration assignment had been settled, resulting in a massive payout by Defendant NYCDOE to union members. Notably, Plaintiff received no monetary benefit from this as she was not directly impacted by the grievances.

55. As the 2016-2017 school year progressed, Plaintiff received orthopedic, neurological, and psychiatric treatment for her injuries and for the mental anguish she was suffering due to her treatment by Defendants. Plaintiff continues to receive all treatments.

56. Additionally, Plaintiff sustained new injuries on or about April 29, 2017, when she sustained labrum shoulder tears to both shoulders when she fell down the stairs at her home due to her knee giving out, due to the aforementioned aggravated injuries she sustained as a result of her accommodations being revoked.

57. In or around May 2017, New York State issued Plaintiff a disability placard, further evincing that Plaintiff was a qualified disabled individual under Federal and State law.

58. On June 23, 2017, Defendants served New York State Education Law 3020-a ( "3020-a") Charges and Specifications against Plaintiff.

### D. Hostile Work Environment and Retaliation During the 2017-18 School Year

59. On or around September 6, 2017, Plaintiff requested via email to Principal Scarmato that she be allowed to attend all school-related meetings. The principal denied the request, claiming participation could be done via a cell phone, although Plaintiff has no ability to remain on the reassigned premises at the end of each workday.

60. On September 14, 2017, Defendants served additional 3020-a Charges and Specifications against Plaintiff.

61. At the beginning of the 2017-18 school year, Plaintiff was denied access to a computer to do any union work. Additionally, her credentials for logging onto any computer were revoked. As a result, Plaintiff was forced to carry her own laptop to school, causing additional strain on her body.

62. In or around November 2017, Plaintiff filed a complaint with the Public Employment Relations Board ("PERB") alleging retaliation for union activity.

63. On November 8, 2017, Plaintiff sent an email request to attend the School Leadership Team Meeting ("SLT") to her principal, as per the instructions of UFT Borough Representative, Analia Gerard, and District Representative, Donna Coppola, requesting permission to attend the upcoming November 21, 2017 meeting, as was her legal right.

64. On November 17, 2017, Lawrence Becker, human resources director for Defendants, informed via email Howard Schoor, secretary for the UFT, that Plaintiff would not be permitted to attend the SLT meetings as a member.

65. Mr. Becker's email to Mr. Schoor acknowledges that SLT meetings are subject to the Open Meetings Law and states that Plaintiff could physically attend a meeting but, due to her reassignment, she could only observe the meetings as a member of the general public and was prohibited from participating as Chapter Leader. Specifically, Mr. Becker wrote: "[S]he may observe the proceedings taking place and may participate to the extent provided for non-Members in the SLT Bylaws, but may not participate in the business of the meeting or otherwise."

66. Plaintiff's 3020-a hearing is ongoing and began on January 11, 2018.

**FIRST CLAIM FOR RELIEF**
**(Against Defendant NYCDOE for Violation of ADA -- Denial of Accommodation)**

67. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

68. Plaintiff is a disabled person under the ADA.

69. Defendant unreasonably denied and removed Plaintiff's reasonable accommodations without any legitimate reason.

70. Indeed, Plaintiff has confirmed that although a reorganization of the school took place, there are classrooms which are not being used and available to be assigned to Teachers for instructional use.

71. Granting Plaintiff's requests for reinstatement of her previously granted accommodations, new accommodations and line of duty leave would not have caused Defendant any hardship, much less undue hardship.

72. The acts above described indicate that Defendant has acted in an intentional discriminatory manner against her because of Plaintiff's disability.

73. The acts above described indicate that Defendant retaliated against Plaintiff for exercising her rights.

74. Defendant willfully and intentionally discriminated and retaliated against Plaintiff based on disability.

75. Plaintiff suffered damages as a proximate result of the foregoing, including physical injury and emotional distress, all of which continue to date. Plaintiff also has suffered, *inter alia*, depression, anxiety, insomnia, loss of appetite.

76. Plaintiff is entitled to full relief and has not filed any other civil or administrative action alleging an unlawful discriminatory practice with respect to the allegations of discrimination which are the subject of this Complaint.

77. As a direct and proximate result of Defendant's discrimination, Defendant's discrimination has caused, continues to cause, and will cause Plaintiff to suffer damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

**(Against Defendant NYCDOE for Violation of ADA – Retaliation)**

78. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

79. Defendant retaliated against Plaintiff after she made reasonable requests for accommodation due to her disability. Specifically, Defendant initiated and substantiated investigations into Plaintiff's conduct; issued Plaintiff unwarranted letters to file; and instituted a 3020-a hearing against Plaintiff.

80. As a direct and proximate result of Defendant's retaliation, Defendant's discrimination has caused, continues to cause, and will cause Plaintiff to suffer damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

**(Against all Defendants for Violation of 42 U.S.C. Section 1983 – Retaliation Against Plaintiff for Exercising Freedom of Speech)**

81. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

82. While acting under color of State Law, Defendants violated Plaintiff's First Amendment rights by retaliating against her for exercising her freedom of speech as a citizen with regard to matters of public concern.

83. Plaintiff, as a union Chapter Leader, filed numerous grievances on behalf of her union members, some of which led to arbitration and settlements with Defendants.

84. Defendants retaliated against Plaintiff for this protected speech. Specifically, Defendants initiated and substantiated investigations into Plaintiff's conduct; issued Plaintiff unwarranted letters to file; and instituted a Section 3020-a disciplinary hearing against Plaintiff.

85. As a direct and proximate result of Defendants' retaliation, Defendants' discrimination has caused, continues to cause, and will cause Plaintiff to suffer damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(Against all Defendants for Violation of New York State Human Rights Law)**

86. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

87. Based upon the foregoing, Defendants deliberately, intentionally and willfully violated the New York State Human Rights Law by denying Plaintiff reasonable accommodation for her disabililties and by retaliating against Plaintiff for making requests for reasonable accommodation, in addition to other forms of discrimination under the NYSHRL.

88. As a result, Plaintiff suffered damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(Against all Defendants for Violation of New York City Human Rights Law)**

89. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

90. Based upon the foregoing, Defendants deliberately, intentionally and willfully violated the New York City Human Rights Law by denying Plaintiff reasonable accommodation

and by retaliating against Plaintiff for making requests for reasonable accommodation, in addition to other forms of discrimination under the NYCHRL.

91. As a result, Plaintiff suffered damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

**(Against all Defendants for Violation of NYS CSL § 75-b – Retaliation)**

92. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

93. Plaintiff reported violations about federal, city and state law violations by the school administration, such as attendance manipulation, grade changing and credit manipulation, and thereby engaged in a protected activity as defined in New York Civil Service Law § 75-b(2)(a).

94. Defendants had notice that Plaintiff participated in such protected activities.

95. Defendants retaliated against Plaintiff by engaging in adverse "personnel actions" as defined by New York Civil Service Law § 75-b(1)(d).

96. Specifically, Defendants initiated and substantiated investigations into Plaintiff's conduct; issued Plaintiff unwarranted letters to file; and instituted a Section 3020-a disciplinary hearing against Plaintiff.

97. As a direct and proximate result of Defendants' retaliation, Defendants' discrimination has caused, continues to cause, and will cause Plaintiff to suffer damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### (Against all Defendants for Intentional Infliction of Emotional Distress)

98. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

99. Defendants engaged in extreme and outrageous conduct with intent to cause severe emotional distress.

100. Defendants' actions led to Plaintiff's injuries and exacerbation of injuries.

101. Plaintiff has suffered severe emotional distress because of her injuries and exacerbation of injuries.

102. As a direct and proximal result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for declaratory relief and damages as follows:

A. A declaratory judgment that Defendants are in violation of the ADA;

B. A declaratory judgment that Defendants are in violation of the New York State Human Rights Law;

C. A declaratory judgment that Defendants are in violation of the New York City Human Rights Law;

D. A declaratory judgment that Defendants are in violation of 42 USC Section 1983;

E. A declaratory judgment that Defendants are in violation of NYS CSL Section 75-b;

F. A declaratory judgment that Defendants engaged in intentional infliction of emotional distress;

G. Enjoining Defendants from engaging in any similar violation;

H. Awarding Plaintiff compensatory damages;

I. Awarding Plaintiff punitive damages;

J. Awarding Plaintiff costs and reasonable attorneys' fees; and

K. Such other and further relief as to this Court may deem necessary, just and proper.

Dated: New York, New York
March 12, 2018

GLASS KRAKOWER LLP
100 Church Street, Suite 800
New York, NY 10007
(212) 537-6859

By: _____
Bryan D. Glass, Esq.