18 CV 1515 (ILG)(RER)

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

———————————————————————

JESSICA PETERSON,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION; AND
JOSEPH SCARMATO, PRINCIPAL OF TOTTENVILLE HIGH
SCHOOL,

Defendants.

———————————————————————

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

———————————————————————

### GLASS KRAKOWER LLP

Attorneys for Plaintiff
100 Church Street, 8th floor, Suite 800
New York, NY 10007

Bryan D. Glass, Esq.
Tel: 212-537-6859
bg@glasskrakower.com

Served July 16, 2018

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................ i

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

ARGUMENT.............. ....................................................................................................... 12

POINT I

THE ACTION IS NOT BARRED BY COLLATERAL ESTOPPEL BASED ON THE
SECTION 3020-A DISCIPLINARY DECISION ............................................................. 12

POINT II

PLAINTIFF HAS STATED VALID CLAIMS OF DISABILITY DISCRIMINATION FOR
FAILURE TO REASONABLY ACCOMMODATE HER DISABILITIES UNDER
THE ADA, NYSHRL, AND
NYCHRL.............. ........................................................................................................... 13

POINT III

PLAINTIFF HAS STATED PLAUSIBLE CLAIMS OF A HOSTILE WORK
ENVIRONMENT UNDER THE ADA, NYSHRL, AND
NYCHRL.............. ........................................................................................................... 14

POINT IV

PLAINTIFF HAS STATED PLAUSIBLE CLAIMS OF RETALIATION UNDER
THE ADA, NYSHRL, AND
NYCHRL.............. ........................................................................................................... 14

POINT V

PLAINTIFF HAS ADEQUATELY ALLEGED A VIABLE FIRST AMENDMENT
RETALIATION CLAIM... .............................................................................................. 15

POINT VI

THERE ARE AMPLE STATE AND CITY LAW CLAIMS PREMISED ON INCIDENTS
ACCRUING AFTER MARCH 12, 2017 WHICH ARE NOT TIME
BARRED.............. ........................................................................................................... 17

POINT VII

THERE ARE AMPLE STATE AND CITY LAW CLAIMS PREMISED ON INCIDENTS
THAT ACCRUED PRIOR TO NOVEMBER 26, 2017 AND AFTER FEBRUARY 26, 2018,
WHICH DID NOT FAIL TO COMPLY WITH NOTICE OF CLAIM REQUIREMENTS
..............................................................................................................................17

POINT VIII

PLAINTIFF HAS STATED A CLAIM UNDER NY CIVIL SERVICE LAW
§ 75-B.................................................................................................................18

POINT IX

PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
SHOULD BE ALLOWED TO PROCEED AT THIS EARLY JUNCTURE....................19

CONCLUSION.......................................................................20

# TABLE OF AUTHORITIES

Cases:

Bacchus v. NYCDOE,
    137 F. Supp. 3d 214 (EDNY 2015) ........................................................ 18

Caraccilo v. Village of Seneca Falls,
    582 F. Supp. 2d 390 (WDNY 2008) ...................................................... 16

Conboy v. AT&T Corp.,
    241 F.3d 242 (2d Cir. 2001) ................................................................... 20

Connick v. Myers,
    461 U.S. 138 (1983) ............................................................................... 15

Garcetti v. Ceballos,
    547 U.S. 410 (2006) .......................................................................... 15, 16

Giove v. City of New York,
    2018 U.S. Dist. LEXIS 18909 (EDNY 2018) ...................................... 12

Gregory v. Daly,
    243 F.3d 687 (2d Cir. 2001) ..................................................................... 2

Hausdorf v. NYCDOE,
    2018 U.S. Dist. LEXIS 13330 (SDNY 2018) ..................................... 2, 17

Hicks v. Baines,
    593 F.3d 159 (2d Cir. 2010) ................................................................... 15

Lane v. Franks,
    571 U.S. 1161 (2014) ............................................................................. 15

Lebowitz v. NYCDOE,
    2017 U.S. Dist. LEXIS 50950 (EDNY 2017) ...................................... 14

Leon v. NYCDOE,
    612 Fed. Appx. 632 (2d Cir. 2015) ....................................................... 12

Montero v. City of Yonkers,
    890 F.3d 386 (2d Cir. 2018) ................................................................... 16

Ok v. NYCDOE,
    18 CV 3902 (EDNY May 8, 2018) ................................................... 16, 19

Payson v. Board of Education of Mt. Pleasant Cottage School District BOE,
    2017 U.S. Dist. LEXIS 154296 (SDNY 2017) ..................................... 16

Pekowsky v. Yonkers BOE,
  23 F. Supp. 3d 269 (SDNY 2014)............................................................................................. 16

Portelos v. NYCDOE,
  2013 U.S. Dist. LEXIS 30125 (EDNY 2013), 12 CV 3141 ................................ 2, 12, 16, 17, 19

Wetzel v. Town of Orangetown,
  2008 U.S. Dist. LEXIS 124443 (SDNY 2008)........................................................................ 18

White v. Roosevelt Union Free School District,
  15 CV 1035 (JS) (EDNY 2017)................................................................................................ 2

Woodlock v. Orange Ulster BOCES,
  281 F. App'x 66, 68 (2d Cir. 2008)........................................................................................ 15

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

JESSICA PETERSON,

        Plaintiff,

                **18-CV-404 (ILG)(RER)**

  -against-

NYC DEPARTMENT OF EDUCATION, and JOSEPH
SCARMATO, PRINCIPAL OF TOTTENVILLE
HIGH SCHOOL,

        Defendants.

-----------------------------------------------------------------X

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

### <u>PRELIMINARY STATEMENT</u>

  Plaintiff JESSICA PETERSON submits this memorandum of law in response to Defendants' motion to dismiss the complaint in this action. Defendants' motion is premature at this juncture and should be denied, as Ms. Peterson has stated multiple valid claims of discrimination and retaliation under 42 U.S.C. Section 1983 pursuant to the First Amendment due to retaliation for her union speech. Defendants' failure to reasonably accommodate her disabilities pursuant to the Americans with Disabilities Act (ADA), and related state and city laws.

  While a Section 3020-a disciplinary decision has been issued against her on April 24, 2018, imposing a fine after this instant federal complaint was filed, it does not preclude the very strong inferences in this action that Ms. Peterson was not reasonably accommodated by Defendants

1

based on her various disabilities, and that she was retaliated against by Defendants for her union activities as the vocal chapter leader in the school, advocating on behalf of the union membership against the school administration.

Therefore, this matter should be promptly scheduled for pretrial discovery and an eventual trial on this basis. The Second Circuit has recognized that complaints of civil rights violations should be not be hastily dismissed, that all allegations in the complaint should be accepted as true, inferences should be drawn in the light most favorable to plaintiff, and such complaints should be construed liberally. *See Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). Based on this liberal standard, Defendants' motion to dismiss has reached far beyond what is appropriate for a motion to dismiss, and motions of this type against teachers have been routinely denied at this early stage of litigation. *See Hausdorf v. NYCDOE*, 2018 U.S. Dist. LEXIS 13330 (S.D.N.Y. 2018); *White v. Roosevelt Union Free School District*, 15 CV 1035 (JS)(SIL) (E.D.N.Y. 12/20/17); *Portelos v. NYCDOE*, 2013 U.S. Dist. LEXIS 30125 (S.D.N.Y. March 1, 2013).

Alternatively, if the Court finds that more factual detail is appropriate, Ms. Peterson seeks leave to file an amended complaint.

## STATEMENT OF FACTS

At the outset, Ms. Peterson respectfully refers to her Complaint for a full and complete recitation of the facts of this matter.

### A. Background

From 1995 until present, Defendant NYCDOE has employed Ms. Peterson as a full-time English Teacher. Complaint ¶ 14. Ms. Peterson worked at Tottenville High School in Staten Island, New York from 1995 to 1996, and then again from 2004 to present, until she was reassigned from her duties in June 23, 2017. *Id.* ¶ 15. Ms. Peterson worked at the High School of

2

Telecommunication Arts and Technology (Tele) from 1996 to 2004. *Id.* ¶ 16. The primary events in this matter concern her service as an English teacher and union chapter leader at Tottenville High School.

While at the Tele High School, Ms. Peterson suffered a line of duty injury ("LODI") in 2002, when two students injured her during a conflict resolution meeting. *Id.* ¶ 16. As a result of the injury, Ms. Peterson was diagnosed with various injuries, including a herniation in her neck and mid thoracic; a bulging disc in her lower lumbar; soft tissue damage to both hips; and two dislocated rib tips. *Id.*

In May 2007, Ms. Peterson exacerbated these 2002 injuries while in school at Tottenville High School. *Id.* ¶ 17. In June 2007, Ms. Peterson made an informal request to Catherine Burgos, her former Assistant Principal, for reasonable accommodations due to her injuries. *Id.* ¶ 17. Specifically, she requested exclusive use of a classroom so that she would not have to carry her belongings back and forth and so as to avoid passing students in the hallways between periods. *Id.* ¶ 18. AP Burgos denied Ms. Peterson's request. *Id.* ¶ 18. As a result of AP Burgos' denial, in or around August 2007, Ms. Peterson submitted a formal request for reasonable medical accommodations. *Id.* ¶ 19.

Defendant NYCDOE granted Ms. Peterson reasonable accommodations in or around September 2007, including but not limited to exclusive use of a classroom C-212A; secured locked cabinets to avoid carrying teaching and/or testing materials and/or supplies; delivery of proctoring materials for exams; to avoid hall-passing; and elevator access. *Id.* ¶ 20.

### B. Union Activity and Retaliation

On or about June 2, 2015, Ms. Peterson was elected United Federation of Teachers ("UFT") Chapter Leader for Tottenville High School. *Id.* ¶ 22. Between September 2015 and the filing of

this action, Ms. Peterson has filed approximately thirty (30) grievances on behalf of her union members, primarily not in her own interest but as an advocate for her fellow teachers at the school. *Id.*

Following her appointment as UFT Chapter Leader at Tottenville High School, as per the UFT-NYCDOE Collective Bargaining Agreement ("CBA"), Ms. Peterson was now mandated to have two free periods per day to handle union business. *Id.* ¶ 23.

On or about June 11, 2015, Principal Scarmato and AP of Organization Clifford Bloom announced that they would have Ms. Peterson vacate her room for two periods at the end of the day since she became the union chapter leader and was not teaching classes in her room, thereby revoking the disability accommodation for exclusive use of a classroom that Ms. Peterson previously had been granted. *Id.* ¶ 24. Additionally, Ms. Peterson learned that the UFT union office in the school, which had always been on the first floor, was now being moved to the basement, thereby causing additional health-related difficulties for Ms. Peterson. *Id.* ¶ 24.

As a result of this revocation of her disability accommodation, Ms. Peterson was forced to relocate to whatever empty classroom and/or office space was available and close-by at the time, resulting in Ms. Peterson being forced to engage in hall-passing of students between periods, putting her at substantial risk for re-injury. *Id.* ¶ 25.

On or about October 6, 2015, Ms. Peterson, as union Chapter Leader, filed a grievance on behalf of the teachers at her school regarding a violation of their contractually-mandated professional administrative period. *Id.* ¶ 26. On or about October 7, 2015, Ms. Peterson, as union Chapter Leader, filed a grievance regarding Principal Scarmato's improper creation of an administrative position—the 9th grade advisory position—at the school. *Id.* ¶ 27. Specifically, Ms. Peterson alleged that the creation of this position violated the union contract because the

administration failed to have a School-Based Option ("SBO") vote. *Id.* These issues were not related to her personal interest.

On or about November 13, 2015, Ms. Peterson filed a grievance against her administration based on a new requirement by the administration that some teachers report to the school on or around 7:00 am, thereby resulting in these teachers working before their collectively-bargained work hours. *Id.* ¶ 28.

On July 1, 2016, Ms. Peterson learned that she won two major union arbitration victories on behalf of her members relating to the aforementioned October 6 and 7, 2015 grievances. *Id.* ¶ 29. The first victory related to Morning Duty, which was a direct violation of a single-session school. *Id.* ¶ 30. Specifically, the principal was requiring staff members to be present prior to the official start of the school day, in contravention of their official work hours. *Id.* The second victory was a ruling that Principal Scarmato created a 9th Grade Advisor position in violation of proper procedure. *Id.* ¶ 31.

On or about July 6, 2016, Ms. Peterson received a call from her UFT District and Borough Representatives, Debra Penny and Donna Coppola, informing her that Principal Scarmato contacted the NYCDOE Office of Labor Relations alleging professional misconduct against her due to Ms. Peterson informing members of the aforementioned arbitration victories. *Id.* ¶ 32.

### C. *Hostile Work Environment and Retaliation After Union Victories During the 2016-17 School Year*

Following the July 2016 union victories, on or about September 7, 2016, Ms. Peterson was informed by Assistant Principal Bloom that she had to resubmit all of her medical documentation to NYCDOE Medical to continue receiving her accommodations. *Id.* ¶ 33. On or about September 9, 2016, Ms. Peterson requested a meeting with Principal Scarmato, at which she complained that her accommodations were not being met. *Id.* ¶ 34. In response, Principal Scarmato informed Ms.

5

Peterson that she had to resubmit her medical documentation for review. *Id.* During the meeting, Ms. Peterson explained that she was in a lot of pain due to her injuries and was engaged in labored breathing, and requested that Principal Scarmato continue honoring her accommodations while she attempted to gather all of the requested documentation. *Id.* During this meeting, Ms. Peterson informed Principal Scarmato that she would consider seeking legal representation due to the improper revocation of her accommodations. *Id.*

Notably, this was the first time that Ms. Peterson was asked to resubmit her medical documentation—which constituted hundreds of pages—since 2007. *Id.* ¶ 35. Upon information and belief of Ms. Peterson, neither Assistant Principal Bloom nor Principal Scarmato had the authority to request that Ms. Peterson resubmit her medical documentation. *Id.* ¶ 35.

On or about September 10, 2016, Principal Scarmato removed additional existing accommodations previously granted to Ms. Peterson, referencing "school reorganization" as the justification. *Id.* ¶ 36. On September 22, 2016, he refused to reinstate her accommodations despite a recommendation from Ms. Peterson's orthopedist. Specifically, Ms. Peterson's schedule was modified so that her teaching periods and prep periods were no longer consecutive. *Id.* The result was that she had to repeatedly vacate her classroom throughout the day, rather than just the last two periods of the day. *Id.* Furthermore, Ms. Peterson was now forced to take her belongings and teaching materials with her during her prep periods. *Id.* Notably, in contrast, approximately thirty (30) teachers had exclusive use of their own classrooms during the 2016-2017 school year. *Id.*

Following Ms. Peterson's conversation with her principal on September 9, 2016, due to having to carry her belongings and classroom materials, Ms. Peterson re-aggravated her lower lumbar injury, in that it became a severe herniation. *Id.* ¶ 37.

In or around mid-September 2016, Ms. Peterson provided information to her union regarding improper class sizes at her school, which resulted in her union filing a grievance. *Id.* ¶ 38.

On or about October 7, 2016, Ms. Peterson suffered another line of duty injury when a student crashed into her left side while she was in the hallway. *Id.* ¶ 39. As a result, Ms. Peterson was not able to support her own weight while walking and requested line of duty injury leave to recuperate and care for herself, pursuant to her medical providers' recommendation. *Id.* ¶ 39. However, Defendants denied her leave request. *Id.*

Ms. Peterson's medical condition thereafter worsened and she required, sought, and received medical treatment for aggravation of her existing medical conditions and new injuries, including bulging and herniated discs, pain, tingling, and numbness in Ms. Peterson's extremities. *Id.* ¶ 40.

In or around the week of October 9, 2016, Ms. Peterson learned, after speaking with Glenn Darien, a Supervisor in the Division of Human Resources, that her medical accommodations were not currently under review nor was the case open, meaning that AP Bloom's and Principal Scarmato's requests that Ms. Peterson resubmit her medical documentation were made without cause or authority. *Id.* ¶ 41. Despite learning this information from Mr. Darien, Ms. Peterson resubmitted her medical documentation per her administration's request and due to sustaining new injuries. *Id.*

During this same week of October 9, 2016, Ms. Peterson reported the discrimination, harassment and retaliation she was experiencing to several different internal and outside administrative agencies and organizations, including the NYCDOE Office of Special Investigations ("OSI"), the Special Commissioner of Investigation ("SCI"), the U.S. Equal

Employment Opportunity Commission ("EEOC"), the NYCDOE Office of Equal Opportunity ("OEO"), the Office of the Superintendent, and her union. *Id.* ¶ 43.

Ms. Peterson repeatedly, throughout the 2016-17 school year, made written and verbal requests for reinstatement of her previous accommodations and new accommodations for her new injuries to Defendants. *Id.* ¶ 44. On or about November 16, 2016, Ms. Peterson reported to DOE medical for a medical examination pursuant to her accommodation requests. *Id.* ¶ 45. Notably, when she arrived, Ms. Peterson learned that the DOE medical doctor did not have any of the new medical documentation that Ms. Peterson had submitted, and only had received medical documentation up until 2007. *Id.* Additionally, Ms. Peterson was shocked to learn that the DOE medical bureau examiner was unfamiliar with the word "protrusion" and lacked a basic understanding of Ms. Peterson's medical records. *Id.*

On or about December 12, 2016, Ms. Peterson received a letter from Defendants informing her that all medical accommodations were denied and not medically warranted, disregarding the recommendations of Ms. Peterson's medical providers. *Id.* No explanation was given for these findings. *Id.* This same day, Ms. Peterson also received a disciplinary letter from her administration. *Id.* ¶ 46.

On or about February 10, 2017, Principal Scarmato initiated an improper, school-based investigation ("SBI") against Ms. Peterson, alleging that Ms. Peterson took pictures of students in someone else's classroom. *Id.* ¶ 48. This investigation resulted in a disciplinary letter to Ms. Peterson's file substantiating the allegation, despite an acknowledgment by Principal Scarmato that he had no direct proof that Ms. Peterson took the alleged pictures. *Id.* Following the aforementioned SBI against Ms. Peterson, on or about February 17, 2017, Ms. Peterson received

a disciplinary letter from her administration, which became a basis for a disciplinary charge against her. *Id.* ¶ 49.

On or about February 27, 2017, Ms. Peterson applied for intermittent Family Medical Leave Act ("FMLA") leave. *Id.* ¶ 50. On or about February 28, 2017, based on a directive from her union and pursuant to her role as a union Chapter Leader, Ms. Peterson filed a complaint against her school administration with SCI, alleging attendance manipulation, grade changing and credit manipulation at the school. *Id.* ¶ 51.

On or about March 22, 2017, Defendants denied Ms. Peterson's request for FMLA leave, stating that she had already used too many sick days for the year. *Id.* ¶ 52. Upon information and belief of Ms. Peterson, other faculty members had been approved for FMLA leave despite having far more absences in the school year than Ms. Peterson. *Id.*

In or around March or April 2017, Defendants retaliated against Ms. Peterson for her requests for accommodation by suddenly attacking her pedagogy and work performance. *Id.* ¶ 53. Ms. Peterson's administration accused Ms. Peterson of pedagogical deficiencies that were unsupported by evidence, and when Ms. Peterson asked questions regarding her administrators' purported concerns with her pedagogy, she received no response. *Id.*

On April 19, 2017, Ms. Peterson learned that the grievances she filed or had filed by the union regarding improper class size and the improper professional administration assignment had been settled, resulting in a massive payout by Defendant NYCDOE to union members. *Id.* ¶ 54. Notably, Ms. Peterson received no monetary benefit from this as she was not directly impacted by the grievances. *Id.*

As the 2016-2017 school year progressed, Ms. Peterson received orthopedic, neurological, and psychiatric treatment for her injuries and for the mental anguish she was suffering due to her treatment by Defendants. Ms. Peterson still continues to receive all treatments to date. *Id.* ¶ 55.

Additionally, Ms. Peterson sustained new injuries on or about April 29, 2017, when she sustained labrum shoulder tears to both shoulders when she fell down the stairs at her home due to her knee giving out, due to the aforementioned aggravated injuries she sustained as a result of her accommodations being revoked and her line of duty injury being denied. *Id.* ¶ 56. In or around March (incorrectly stated in complaint as May) 2017, New York State issued Ms. Peterson a disability placard, which is further evidence that Ms. Peterson was a qualified disabled individual under Federal and State law. *Id.* ¶ 57.

On June 23, 2017, Defendants served New York State Education Law 3020-a ( "3020-a") Charges and Specifications against Ms. Peterson. *Id.* ¶ 58. That proceeding did not result in her termination but rather a $20,000 fine was assessed against her by a Section 3020-a panel arbitrator on April 24, 2018, after this federal action was commenced.

### D. Hostile Work Environment and Retaliation During the 2017-18 School Year

On or around September 6, 2017, after her reassignment from her teaching duties, Ms. Peterson requested via email to Principal Scarmato that she be allowed to attend all school-related meetings. *Id.* ¶ 59. The principal denied the request as well as Ms. Peterson's access to the Tottenville High School building, claiming participation could be done via a cell phone, although Ms. Peterson has no ability to remain at her reassigned location at the end of each workday, nor has access to a private office or phone at the reassigned location, while she has a plethora of personal belongings in the Tottenville High School building. *Id.*

On September 14, 2017, Defendants served additional 3020-a Charges and Specifications against Ms. Peterson, shortly after the EEOC was actively investigating her complaint against the principal. *Id.* ¶ 60. At the beginning of the 2017-18 school year, Ms. Peterson was denied access to a computer to do any union work. *Id.* Additionally, her credentials for logging onto any NYCDOE computer were revoked. *Id.* As a result, Ms. Peterson was forced to carry her own laptop to school, causing additional strain on her body. *Id.*

In or around November 2017 (actually date was October 23, 2017), Ms. Peterson filed a complaint with the New York State Public Employment Relations Board ("PERB") alleging retaliation for union activity. *Id.* ¶ 62. On November 8, 2017, Ms. Peterson sent an email request to attend the School Leadership Team Meeting ("SLT") to her principal, as per the instructions of UFT Borough Representative, Analia Gerard, and District Representative, Donna Coppola, requesting permission to attend the upcoming November 21, 2017 meeting, as was her legal right. *Id.* ¶ 63.

On November 17, 2017, Lawrence Becker, Director of Human Resources for Defendants, informed via email Howard Schoor, secretary for the UFT, that Ms. Peterson would not be permitted to attend the SLT meetings as a member. *Id.* ¶ 64.

DOE Human Resources Director Mr. Becker's email to Mr. Schoor acknowledges that SLT meetings are subject to the Open Meetings Law and states that Ms. Peterson could physically attend a meeting but, due to her reassignment, she could only observe the meetings as a member of the general public and was prohibited from participating as Chapter Leader. *Id.* ¶65. Specifically, Mr. Becker wrote: "[S]he may observe the proceedings taking place and may participate to the extent provided for non-Members in the SLT Bylaws, but may not participate in the business of the meeting or otherwise." *Id.*

11

## ARGUMENT

## POINT I

## THS ACTION IS NOT BARRED BY COLLATERAL ESTOPPEL BASED ON THE SECTION 3020-A DISCIPLINARY DECISION.

Defendants argue that this matter is barred in part by collateral estoppel. While Plaintiff does not dispute the fact that a 3020-a arbitration decision could have some preclusive findings in a federal action on certain factual disputes that were *actually* considered and decided by the arbitrator, the doctrine of collateral estoppel has limited impact in this action. The Second Circuit has recognized that a Section 3020-a decision even with some adverse findings of guilt against a teacher does not preclude prosecution of a civil rights action by a plaintiff teacher. *See Leon v. Department of Education*, 612 Fed. Appx. 632 (2d Cir. 2015) (rejecting collateral estoppel application in ADA discrimination action after NYC teacher terminated after Section 3020-a charges); *see Giove v. City of New York*, 2018 U.S. Dist. LEXIS 18909 (EDNY 2018) (rejecting NYCDOE's collateral estoppel affirmative defense in civil rights action).

In addition, collateral estoppel works both ways, so to the extent the arbitrator actually dismissed disciplinary charges against Ms. Peterson, collateral estoppel works in her favor and against Defendants. In fact, dismissal of Section 3020-a charges by the arbitrator suggests a strong inference that those disciplinary charges were otherwise brought against her based on improper discriminatory or retaliatory motives by Defendants.

It is noteworthy that Section 3020-a appointed hearing officer, Arbitrator O'Connell, in her April 24, 2018 decision, did not make any findings regarding the timing and motive of the particular disciplinary charges being brought against Ms. Peterson. Therefore, the Section 3020-a decision does not address the issue in this case as to whether the charges were motivated in the

first place as retaliation for her First Amendment protected union activities. *See, e.g., Portelos v. NYCDOE*, 12 CV 3141 (EDNY) (case went to trial in part on question whether teacher was retaliated for his union speech). In addition, even though the arbitrator found that Ms. Peterson modified some disability related paperwork, that does not address the question of whether the NYCDOE reasonably accommodated Ms. Peterson's ongoing medical needs and need for accommodation in general. There are ample allegations in the instant complaint that Defendants failed to consider her accommodation requests on multiple occasions and in fact retaliated against her by denying her certain accommodations after she became a vocal and quite effective chapter leader at Tottenville High School.


## POINT II

### PLAINTIFF HAS STATED VALID CLAIMS OF DISABILITY DISCRIMINATION FOR FAILURE TO REASONABLY ACCOMMODATE HER DISABILITIES UNDER THE ADA, NYSHRL, AND NYCHRL.

On this point, Defendants appear to be arguing disputed issues of fact before a full factual development of this record. On page 9 and footnote 2 of page 10 of their brief, Defendants appear to argue that they were not required to make Plaintiff's suggested accommodations or that her requests were inherently unreasonable. The arbitrator did not make specific findings in her decision about whether Plaintiff's accommodation requests were reasonable. She made a finding about whether a single medical note was altered by Plaintiff without the DOE's knowledge, which Plaintiff continues to dispute, but does recognize the outcome of the proceeding. The question of whether her multiple accommodation requests were handled properly by the NYCDOE, especially

after her vocal union advocacy against the school principal, is ripe for further factual development at this stage of the litigation under federal, state, and city disability law.

## POINT III

### PLAINTIFF HAS STATED PLAUSIBLE CLAIMS OF A HOSTILE WORK ENVIRONMENT UNDER THE ADA, NYSHRL, AND NYCHRL.

On this point as well, Defendants again appear to be arguing disputed issues of fact as settled law of the case. It is hard to believe that Defendants could credibly assert that Ms. Peterson is not asserting here "a regular barrage of harassment" or that her complaints are "petty slights and inconveniences" as stated on page 12 of their brief. The complaint is replete with factual allegations that the administration engaged in a campaign to make her life miserable after she became chapter leader with a series of hostile actions against her, including, but not limited to, denying her sorely needed medical accommodation requests. *See* Complaint ¶¶ 46-53.

To the extent that Defendants claim that hostile work environment is not discretely pled as a separate cause of action in the complaint, courts in this Circuit have recognized such claims to be construed in a complaint even if not set forth as a separate cause of action. *See Lebowitz v. NYC Department of Education*, 2017 U.S. Dist. LEXIS 50950, at *44 (E.D.N.Y. March 31, 2017). .

## POINT IV

### PLAINTIFF HAS STATED PLAUSIBLE CLAIMS OF RETALIATION UNDER THE ADA, NYSHRL, AND NYCHRL.

Again, on this point as well, Defendants again inappropriately appear to be arguing disputed issues of fact as settled law of the case. It is difficult to believe that Defendants could

credibly assert on page 14 of its brief that Ms. Peterson does not have plausible retaliation claims *after* making her September 2016 disability complaint to Principal Scarmato. What followed were *not* merely "trivial harms" or "petty slights or annoyances", but rather a barrage of hostile actions from Principal Scarmato that ultimately culminated in Section 3020-a charges against her, and led to greatly exacerbated medical complications. *See* Complaint ¶¶ 46-53. The complaint is replete with factual allegations that her school administration engaged in a campaign to make her life miserable *after* her September 2016 complaint, including but not limited to disciplinary letters to file, and Section 3020-a disciplinary charges against her seeking termination of her employment. This motion to dismiss argument on the retaliation claim is a complete stretch for Defendants, and should be rejected. *See Hicks v. Baines*, 593 F.3d 159 (2d Cir. 2010) (burden for establishing a prima facie case for retaliation is *de minimis*).

## POINT V

### PLAINTIFF HAS MORE THAN ADEQUATELY ALLEGED A VIABLE FIRST AMENDMENT RETALIATION CLAIM.

In order to prevail on a First Amendment retaliation claim, a plaintiff must demonstrate that she engaged in speech protected by the First Amendment, that she suffered an adverse employment action, and that a causal connection between the two existed, "in that the speech was a substantial or motivating factor for the adverse employment action." *Lane v. Franks*, 571 U.S. 1161 (2014). The threshold inquiry in any First Amendment retaliation case is whether the employee was speaking as a citizen on a matter of public concern. *See Connick v. Meyers*, 461 U.S. 138, 147 (1983); *Woodlock v. Orange Ulster BOCES*, 281 Fed. Appx. 66, 68 (2d Cir. 2008) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

The inquiry into whether an individual was speaking as a citizen "is a practical one." *Garcetti,* 547 U.S. at 424-25. Speech by a public employee retains some possibility of First Amendment protection when it "is the kind of activity engaged in by citizens who do not work for the government." *Id.* at 423. Factors that have been considered by courts, but none of which are dispositive, are whether the speech occurred in the workplace; whether the speech concerns the subject matter of the employee's job; the plaintiff's job description; the person to whom the speech was directed; and whether the speech resulted from special knowledge gained through the plaintiff's employment. *See Garcetti,* 547 U.S. at 420-21; *see also Caraccilo v. Vill. of Seneca Falls,* 582 F.Supp.2d 390, 405 (W.D.N.Y. 2008).

Defendants' argument on this point is weak as the complaint clearly contains ample factual allegations that Ms. Peterson has been retaliated against repeatedly by her school administration for her union activities as chapter leader of this school, including many mass emails she sent to the UFT-represented faculty at the school, and that she was advocating for more than just her own personal interest. Courts in this Circuit have repeatedly recognized this type of speech as protected by the First Amendment when it concerns more than the union chapter leader's own personal interest. *See Pekowsky v. Yonkers Board of Education,* 23 F.Supp.3d 269 (S.D.N.Y. 2014); *Payson v. BOE of Mt. Pleasant Cottage School District Board of Education,* 2017 U.S. Dist. LEXIS 154296 (S.D.N.Y. 2017); *Montero v. City of Yonkers,* 890 F.3d 386 (2d Cir. 2018) (recognizing First Amendment protected union speech). Courts also have regularly denied motions to dismiss based on First Amendment speech at the pleadings stage. *See Portelos, supra; Ok v. NYCDOE,* 18 CV 3902 (E.D.N.Y. May 8, 2018).

Here, Ms. Peterson advocated repeatedly for her fellow UFT faculty members at grievance meetings and disciplinary meetings, well beyond her own personal interest. She also advocated

16

for several issues that received media attention and greatly embarrassed Principal Scarmato and his school administration in the UFT union newspaper. These are precisely the types of union activities that one could logically conclude a school principal would retaliate against an effective chapter leader for, which is in fact what happened in this case. Clearly, at this early pleading stage, whether a substantial motivating factor for Principal Scarmato retaliating against Ms. Peterson was her union activities is a legitimate issue of further factual development and potential trial. *See, e.g., Portelos v. NYCDOE, supra.* In addition, there is a close temporal proximity pled in the complaint, as the heart of the retaliation occurred with disciplinary allegations against Ms. Peterson shortly after publication of the union victories of the UFT newspaper in July 2016. Complaint ¶¶ 30-31; *see Hausdorf, supra.*

## POINT VI

### THERE ARE AMPLE STATE AND CITY LAW CLAIMS PREMISED ON INCIDENTS ACCRUING AFTER MARCH 12, 2017 WHICH ARE NOT TIME BARRED.

While Defendants may be technically correct that some specific factual allegations may be time barred for purposes of state and city law claims only, there are ample adverse actions after March 12, 2017 that are pled in the complaint, including the preferral of 3020-a charges and interference with her duties since Plaintiff's reassignment from her duties. Complaint ¶¶ 53-65.

## POINT VII

### THERE ARE AMPLE STATE AND CITY LAW CLAIMS THAT ACCRUED PRIOR TO NOVEMBER 26, 2017 AND AFTER FEBRUARY 26, 2018, WHICH DID NOT FAIL TO COMPLY WITH NOTICE OF CLAIM REQUIREMENTS.

Again, Defendants' argument is limited to state and city law claims here and have nothing to with her federal claims. While Defendants may be technically correct that some allegations

may be time barred, there are ample adverse actions after November 26, 2017 that are pled in the complaint, including the preferral of disciplinary charges. In addition, Defendants concede that a notice of claim was indeed filed placing the NYCDOE on notice of Defendants' state and city law claims. In addition, the individual defendant Principal Scarmato is not even subject to a notice of claim requirement as a school principal, and not a school officer, and can be sued independently under state and city law without the filing of a notice of claim against him. *See Bacchus v. NYCDOE*, 137 F. Supp. 3d 214 (EDNY 2015).

## POINT VIII

### PLAINTIFF HAS STATED A CLAIM UNDER
### NEW YORK STATE CIVIL SERVICE LAW SECTION 75-B.

In order to state a claim under Civil Service Law § 75-b, a plaintiff must disclose a violation of a law, rule or regulation that endangers public health or safety, or which she reasonably believes constitutes an improper government action, to a governmental body, and show a causal connection between the disclosure and an adverse personnel action. *Wetzel v. Town of Orangetown*, 2008 U.S. Dist. LEXIS 124443, *35-37 (SDNY 2008).

Ms. Peterson has met her burden in bringing this claim. She clearly suffered an adverse personnel action, as she faced an increasingly hostile work environment from school administration after years of consistently positive evaluations and praise.

Defendants further argue that CSL § 75-b is inapplicable to Ms. Peterson because her union contract afforded her an ample procedural mechanism to challenge the employment actions about which she complains. Ms. Peterson in fact did pursue these grievances. CSL § 75-b applies to those who are not protected by a CBA grievance procedure. Plaintiff has not been protected by these grievance procedures because they are controlled by the very people who are retaliating

18

against her. CSL § 75-b is the only proper mechanism by which she can properly be protected for her whistleblower behavior.

Courts in this Circuit have denied Defendants' CSL § 75-b arguments at the motion to dismiss stage. In *Portelos v. NYCDOE, supra,* Honorable Judge Mauskopf rejected the very argument Defendants make in this point, and found that a New York State Civil Service Law 75-b claim should proceed to discovery in a similar teacher case alleging First Amendment retaliation. In *Ok v. NYCDOE, supra,* Judge Cogan recently denied a motion to dismiss a CSL 75-b claim. In addition, Defendants go way too far in stating that a plaintiff teacher is required to grieve *any* alleged employment action through the collective bargaining agreement, as stated on page 23 of Defendants' brief, without being able to pursue relief in other forums. The preferral of the disciplinary charges alone against Ms. Peterson after she made repeated complaints about Principal Scarmato to multiple investigative bodies provides a basis to allow her to proceed on this claim.

## POINT IX

### PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE ALLOWED TO PROCEED AT THIS EARLY JUNCTURE.

Plaintiff respectfully requests that this claim be deferred for further factual development in this matter. While Plaintiff recognizes the high standard of proof for this type of cause of action, the wide litany of extreme and outrageous conduct pled in the instant complaint by Principal Scarmato against Ms. Peterson, including denial of much needed disability accommodations which exacerbated her medical condition and punishment for her victories as a union chapter leader, warrants further factual development and an analysis as to whether this is the type of rare case where intentional infliction of emotional distress is an appropriate claim warranting damages in this action. *See Conboy v. AT&T Corp.,* 241 F.3d 242 (2d Cir. 2001).

19

## CONCLUSION

For the foregoing reasons, Ms. Peterson respectfully requests that the Court deny Defendants' motion to dismiss the complaint, order the case to proceed to discovery on all material factual issues, and grant such other and further relief as the Court may deem just and proper. In the alternative, Ms. Peterson respectfully requests leave to amend the complaint as appropriate to provide sufficient facts on which relief can be granted.

Dated: New York, New York
July 16, 2018

GLASS KRAKOWER LLP
100 Church Street, Suite 800
New York, NY 10007
(212) 537-6859
bg@glasskrakower.com

By: _____
BRYAN D. GLASS, ESQ.