UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JESSICA PETERSON,

Plaintiff,

v.

NEW YORK CITY DEPARTMENT OF
EDUCATION

and

JOESPH SCARMATO,

Defendants.
-----------------------------------------------------------x

MEMORANDUM & ORDER

18-CV-1515 (ILG)

GLASSER, Senior United States District Judge:

Plaintiff is a Staten Island public school teacher and union chapter president. (Compl. ¶¶ 14–15, 21). Defendants are the City Department of Education ("DOE") and the principal of Plaintiff's former high school. (*Id.* ¶¶ 6–7). Defendants allegedly: (i) denied and removed Plaintiff's disability accommodations; (ii) retaliated against her; (iii) created a hostile work environment; and (iv) intentionally caused her emotional distress. (*Id.* ¶¶ 67–102). The complaint asserts various causes of action under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"); the Civil Rights Act of 1871, 42 U.S.C. § 1983; the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"); Section 75-b of the New York Civil Service Law ("NYCSL"); and New York common law. (*Id.*).

Defendants move to dismiss all claims under Fed. R. Civ. Proc. 12(b)(6), for failure to state a claim upon which relief can be granted. (ECF No. 13). For the reasons stated below, the motion is GRANTED in part and DENIED in part.

1

## BACKGROUND

### I.  Initial Facts

Plaintiff taught at Tottenville High School from 1995–1996 and from 2004–2017. (Compl. ¶ 14). In 2007, she suffered injuries to her neck, back and hips, and received a disability accommodations letter from the DOE. (*Id.* ¶¶ 16, 20; Def's. Mem. 3).

Plaintiff believes she was granted six accommodations: assignment of the same classroom for teaching, freedom from sharing that classroom with other teachers, secured cabinets to avoid carrying teaching materials, delivery of proctoring materials for exams, exemption from hall passing[1] and elevator access. (Compl. ¶ 20; ECF No. 14-1 at 45). Defendants argue that Plaintiff was granted only three of these: assignment of the same classroom, secured cabinets and elevator access.[2] (Def's. Mem. 2–6).

On June 2, 2015, Plaintiff became union chapter leader of the high school. (Compl. ¶ 21). In that capacity, she filed approximately thirty grievances against the school and achieved a number of victories. (*Id.* ¶¶ 26–32, 51).

Tensions escalated over the next few years, which Plaintiff characterizes as retaliation for her union activity and for complaining about her disability accommodations.[3] Defendants

---

[1] A "no hall passing" accommodation is the right to not walk in the hallway when students do so. (ECF No. 14-1 at 53).

[2] As discussed *infra*, a state investigation of Plaintiff for misconduct determined that her "six-point" accommodations letter was a forgery. (ECF No. 14-1 at 65). Ordinarily, this Court would be required to accept Plaintiff's factual allegations regarding the accommodations letter as true for the purposes of resolving Defendants' motion to dismiss. However, Defendants' motion hinges in part on whether the findings of the state investigation preclude Plaintiff from alleging that she was granted six accommodations. (Def's. Mem. 7–8).

[3] On September 9, 2016, Plaintiff met with Defendant Scarmato to complain that her accommodations were not being met. (Compl. ¶ 34). The following month, she filed a report with

allegedly revoked her existing accommodations,[4] denied her requests for new accommodations,[5] attacked her "pedagogy and work performance," opened a New York State Education Law § 3020-a investigation against her for misconduct, denied her access to school meetings and school computers[6] and sent her disciplinary letters. (*Id*. ¶¶ 44–66; Def's. Mem. 4–5).

## II. **Plaintiff's Complaint**

Plaintiff filed her complaint in this Court on March 12, 2018.[7] She alleges: (1) violation of the ADA by denying Plaintiff disability accommodations ("Claim I"); (2) violation of the ADA by retaliating against Plaintiff for making accommodations requests ("Claim II"); (3) violation of 42 U.S.C. § 1983 by retaliating against Plaintiff for exercising her First Amendment rights ("Claim III"); (4) violation of the NYSHRL by denying Plaintiff disability accommodations and

---

various administrative agencies regarding the discrimination, harassment and retaliation she believed she was experiencing. (*Id.* ¶ 43).

[4] The complaint alleges that school officials: (1) informed Plaintiff she would have to leave her classroom for two periods during the day ("June 11, 2015 Incident"); (2) asked her to resubmit all medical documentation of her disability ("September 7 and September 9, 2016 Incidents"); (3) modified her schedule in a way that forced her to carry her belongings back and forth between rooms ("September 10, 2016 Incident"); and (4) sent her a letter on December 12, 2016 denying without explanation all of her existing medical accommodations ("December 12, 2016 Incident"). (*Id*. ¶¶ 24, 33, 34, 36, 46).

[5] The complaint does not specify which new accommodations Plaintiff sought, other than a request for leave under the Family Medical Leave Act ("FMLA") after she allegedly suffered a new injury. (*Id.* ¶¶ 50, 52).

[6] On June 23, 2017, Plaintiff was reassigned out of the school pending the outcome of the 3020-a investigation. (Compl. ¶ 15; Def's. Mem. 5). Following her reassignment, Defendants allegedly refused to let Plaintiff attend school-related meetings and revoked her computer login credentials. (Compl. ¶ 59–66).

[7] Plaintiff also filed a complaint with the New York State Public Employment Relations Board ("PERB"), served on Defendants a Written Verified Notice of Claim, and received a right to sue letter from the Equal Employment Opportunity Commission. (*Id.* ¶¶ 12–13, 62).

by retaliating against her for complaining about her accommodations ("Claim IV"); (5) violation of the NYCHRL by denying Plaintiff disability accommodations and by retaliating against her for complaining about her accommodations ("Claim V"); (6) violation of NYCSL § 75-b by retaliating against Plaintiff for filing reports with various administrative agencies ("Claim VI"); and (7) intentional infliction of emotional distress ("IIED") ("Claim VII"). (Compl. ¶¶ 67–102). Plaintiff also asks this Court to construe the complaint to include unpled claims for hostile work environment under the ADA, NYSHRL and NYCHRL. (Pl's Opp'n 14).

Claims I and II are against Defendant DOE only. All other claims are against both Defendants.

### III. New York State Education Law § 3020-a Investigation and Decision

While Plaintiff's complaint remained pending, the DOE investigated Plaintiff for misconduct. That investigation culminated in an April 24, 2018 decision.[8] (ECF No. 14-1). The hearing officer found that Plaintiff's "six-point" accommodations letter was a forgery, submitted to obtain accommodations to which she was not entitled.[9] (*Id.* at 61–64). Defendants' three-point letter was deemed authentic. (*Id.*). These determinations were based on the following evidence:

1. The three-point letter and six-point letter contained identical signatures,[10] indicating that at least one was doctored.[11] (*Id.* at 63).

---

[8] New York State Education Law § 3020-a provides that a school district cannot terminate a tenured teacher without a hearing.

[9] Specifically, the hearing officer found that Plaintiff in 2016 "intentionally created and/or possessed and submitted a forged document containing false information" to both Defendant Scarmato and the Medical Division of the DOE. (ECF No. 14-1 at 4, 64, 66).

[10] Plaintiff theorized that the signatory used a rubber stamp to sign the letter. The hearing officer found this explanation implausible because the signature touched the salutation and typed signature line in precisely the same places. (*Id.* at 63).

[11] Only photocopies of the letter were available, even though originals are supposed to be sent to the employee receiving the accommodation. (*Id.* at 48). Notably, Plaintiff was unable to recall whether she had received an original copy of the three-point or six-point letter. (*Id.*).

2. Certain words in the six-point letter were typed in a different font from the rest of the document. (*Id.* at 46).

3. The Office of Equal Opportunity and the Medical Division of the DOE, which are required to keep disability accommodation letters on file, had only the three-point letter in their records. (*Id.* at 62).

4. The six-point letter did not include standard language used in accommodation letters. (*Id.* at 46).

5. Certain accommodations found only in the six-point letter would not have been feasible at such a large school. If such accommodations had been granted, email records would have at least reflected discussion of such concerns, which they did not. (*Id.* at 61).

6. Plaintiff shared a classroom for at least seven school years during the relevant period, without protest. This begged the conclusion that a "no classroom sharing" accommodation, found only in the six-point letter, was never granted. The hearing officer found Plaintiff's explanation for this discrepancy to be untruthful. (*Id.* at 62).

7. Plaintiff never requested that teaching materials be delivered to her during the relevant period. This begged the conclusion that the "delivery of materials" accommodation, found only in the six-point letter, was never granted. (*Id.* at 60).

8. A former principal of the high school testified credibly that accommodations of "no hall passing" and "no classroom sharing" would not have been feasible at such a large school. This begged the conclusion that those accommodations, found only in the six-point letter, were never granted. (*Id.* at 61).

9. Various third parties testified credibly to having seen the three-point letter on prior occasions, but not the six-point letter. The hearing officer did not find Plaintiff's explanation for this discrepancy plausible. (*Id.* at 62, 63).

The hearing officer concluded that Plaintiff only ever received three disability accommodations: assignment of the same classroom for teaching, secured cabinets and elevator access. (*Id.* at 61–63). Plaintiff was never entitled to delivery of materials, exemption from hall passing, or freedom from sharing her classroom. (*Id.* at 62-63). This finding was based on credible documentary and testimonial evidence, namely "requests [for accommodations] which the [Plaintiff] made in 2007, and the manner in which the Medical Division and the school granted those requests in 2007." (*Id.*).

The hearing officer fined Plaintiff $20,000 for her forgery of the six-point letter, noting that the "falsification of a document calls into question the ability of the employer to trust an employee." (*Id.* at 65). However, she stopped short of terminating the Plaintiff, citing her tenure and lack of prior disciplinary record. (*Id.*).

Finally, the hearing officer determined that Plaintiff called a student "bat shit crazy" on two occasions, and therefore violated a school regulation prohibiting verbal abuse. (*Id.* at 66). This was deemed a minor infraction which did not warrant significant punishment. (*Id.*).

## IV. <u>Defendants' Motion to Dismiss</u>

Following the 3020-a decision, Defendants moved on various grounds to dismiss this case for failure to state a claim on which relief can be granted. (ECF No. 13; Def's. Mem. 2). For the reasons discussed below, Defendants' motion is:

(1) DENIED as to Defendant DOE with respect to Claims I and II, which were not brought against Defendant Scarmato;

(2) DENIED as to Defendant Scarmato with respect to Claims IV and V; and

(3) GRANTED with respect to all other claims.

Furthermore, Plaintiff may only rely on the December 12, 2016 Incident, *see* note 4, *supra*, as the basis for the remaining claims.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft*, 556 U.S. at 678. The Court must accept the non-moving party's factual allegations as true and draw all reasonable inferences in its favor. *ATSI Commc'ns, Inc. v. Shaar Fund, LTD.*, 493 F.3d 87, 98 (2d Cir. 2007).

## DISCUSSION

### I.   Preclusive Effect of the 3020-a Decision

Defendants argue that several issues before this court were already decided by the 3020-a proceeding. (Def's. Mem. 7). The Court finds that while the 3020-a decision does not fully extinguish any particular claim, it does preclude many of the allegations on which Plaintiff relies to satisfy those claims.

Federal courts apply the rules of collateral estoppel of the state in which the prior decision was rendered, which in this case is New York. *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000). In New York, the "doctrine [of collateral estoppel] applies if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action." *Giove v. City of New York*, No. 15-CV-02998 (PKC) (VMS), 2018 WL 736008, at *3 (E.D.N.Y. Feb. 5, 2018) (citing *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349 (1999)). Section 3020-a proceedings generally satisfy these requirements. *Ferraro v. New York City Dep't of Educ.*, 752 F. App'x 70, 73 (2d Cir. 2018).

Several material issues before this Court were actually and necessarily decided by the 3020-a proceeding. Most critically, the hearing officer determined that Plaintiff was only ever granted three accommodations: assignment of the same classroom, secured cabinets and elevator access. (ECF No. 14-1 at 60–61). Plaintiff was never granted delivery of materials, exclusion from

classroom sharing or exemption from hall passing. (*Id.*). The six-point letter was deemed a forgery, which Plaintiff submitted with the intent to defraud the DOE. (*Id.* at 64).

These issues were also litigated fairly and fully. The hearing officer based her conclusions on clear documentary evidence and the testimony of multiple witnesses, including Plaintiff, who she found at times to be untruthful. (*Id.* at 59–64).

Accordingly, this Court is precluded from giving any weight to any factual allegations in the complaint which directly contradict these findings. In particular, Plaintiff alleges that:

> On or about June 11, 2015, Principal Scarmato and AP of Organization Clifford Bloom announced that they would have Plaintiff vacate her room for two periods at the end of the day since she became the union chapter leader and was not teaching classes in her room*, thereby revoking the accommodation for exclusive use of a classroom that Plaintiff had been granted.*

(Compl. ¶¶ 24) (emphasis added). She further alleges that:

> On or about September 10, 2016, Principal Scarmato removed additional existing accommodations previously granted to Plaintiff, referencing "school reorganization" as the justification. Specifically, Plaintiff's schedule was modified so that her teaching periods and prep periods were no longer consecutive. *The result was that she had to repeatedly vacate her classroom throughout the day, rather than just the last two periods of the day. . . . Notably, approximately thirty (30) teachers had exclusive use of their own classrooms during the 2016–2017 school year.*

(*Id.* ¶¶ 36) (emphasis added). These two allegations are premised on Defendants revoking the "no classroom sharing" accommodation, which the 3020-a proceeding determined was never granted in the first place.[12] (ECF No. 14-1 at 61). Accordingly, Plaintiff's federal, state and city law claims

---

[12] In opposing Defendants' motion, Plaintiff argues that "even though the [hearing officer] found that [Plaintiff] modified some disability related paperwork, that does not address the question of whether the [DOE] reasonably accommodated [her] ongoing medical needs and need for accommodation in general." (Pl's Opp'n 13). This is only true to the extent that Plaintiff is arguing she was entitled to *new* accommodations. The June 11, 2015 and September 10, 2016 Incidents allege that certain accommodations were *revoked*. Furthermore, the hearing officer did not find that Plaintiff merely "modified some disability related paperwork." Rather, she concluded that

for disability discrimination and disability retaliation cannot be premised on the June 11, 2015 or September 10, 2016 Incidents. More generally, Plaintiff may not allege that she was previously granted any disability accommodations beyond those delineated in the three-point letter: assignment of the same classroom, secured cabinets and elevator access.

## II. Failure to Accommodate Under ADA, NYSHRL and NYCHRL (Claims I, IV and V)

Claims I, IV and V allege failure to accommodate a disability under the ADA, NYSHRL and NYCHRL. (Compl. ¶¶ 67–77, 86–88, 89–91). Defendants argue that Plaintiff fails to allege facts which could plausibly establish a *prima facie* case for each of those claims. (Def's. Mem. 9).

To establish a *prima facie* case for failure to accommodate under the ADA, the plaintiff must show that: (1) she was an individual with a disability under the meaning of the statute; (2) her employer is covered by the statute and had notice of the disability; (3) she could perform the essential functions of the job with reasonable accommodation; and (4) the employer failed to provide reasonable accommodation. *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006). The elements to establish disability discrimination under the NYSHRL and NYCHRL "generally track the ADA." *Thomson v. Odyssey House*, No. 14-CV-3857 (MKB), 2015 WL 5561209, at \*18 (E.D.N.Y. Sept. 21, 2015), *aff'd*, 652 F. App'x 44 (2d Cir. 2016). "However, the NYSHRL provides broader protection than the ADA, and the NYCHRL is broader still." *Pagan v. Morrisania Neighborhood Family Health Ctr.,* No. 12 Civ. 9047(WHP), 2014 WL 464787, at \*6 (S.D.N.Y. Jan. 22, 2014). At issue is whether Plaintiff sufficiently alleges that she was denied reasonable accommodation. Defendants do not appear to contest that the other requirements are satisfied.

---

Plaintiff "intentionally submitted a forged document containing false information" with "the intent to defraud the Department [of Education] by obtaining medical accommodations to which she was not entitled." (ECF No. 14-1 at 64).

According to the complaint, Defendants revoked Plaintiff's existing accommodations on July 11, 2015, September 7, 2016, September 9, 2016, September 10, 2016 and December 12, 2016. (Compl. ¶¶ 33, 34, 36, 46). However, Plaintiff is collaterally estopped from relying on the July 11, 2015 and September 10, 2016 Incidents. *See* Part I, *supra*. These are premised on the revocation of non-existent accommodations in the forged six-point letter. (*Id.* ¶ 36). Nor may Plaintiff rely on the September 7 and September 9, 2016 Incidents, in which school administrators asked Plaintiff to resubmit her medical documentation. (*Id.* ¶¶ 33, 34). A mere request for paperwork does not itself constitute failure to provide reasonable accommodation. However, Plaintiff may rely on the December 12, 2016 Incident to allege that she was denied reasonable accommodation. According to the complaint, Defendants sent Plaintiff a letter on that date revoking "all" of her existing medical accommodations. (*Id.* ¶ 46). This would presumably include the revocation of genuine accommodations contained in the three-point letter.

Defendants also allegedly denied Plaintiff's requests for new disability accommodations. (*Id.* ¶ 44). With one exception—Plaintiff's request for FMLA leave—the complaint does not specify which new accommodations requests were denied. *See* note 5, *supra*. The 12(b)(6) standard of review is not satisfied by "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft*, 556 U.S. at 678. Furthermore, FMLA leave is not a reasonable accommodation under the ADA, but rather "a right enforceable under a separate statutory provision." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017). "An employee seeking FMLA leave is by nature arguing that he *cannot* perform the functions of the job, while an employee requesting a reasonable accommodation communicates that he *can* perform the essential functions of the job." *Id.* at 792; *see also Navarro v. Pfizer Corp.*, 261

F.3d 90, 101 (1st Cir. 2001) (noting that the "ADA and the FMLA have divergent aims, operate in different ways, and offer disparate relief").

Accordingly, only one allegation contained in the complaint—the December 12, 2016 Incident—could plausibly give rise to a failure to accommodate claim.

### III. Retaliation Under ADA, NYSHRL and NYCHRL (Claims II, IV and V)

On September 9, 2016, Plaintiff complained to Defendant Scarmato that her disability accommodations were not being met ("September 2016 Meeting"). (Compl. ¶ 34). During the week of October 9–15, 2016, she reported the discrimination, harassment and retaliation she believed she was experiencing to several federal, state and local administrative agencies ("October 2016 Report"). (*Id.* ¶ 43). Plaintiff alleges that Defendants retaliated against her for taking these actions. (*Id.* ¶¶ 79, 87, 90).

To make out a *prima facie* retaliation case under the ADA and NYSHRL, the plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) the defendants were aware that she engaged in that activity; (3) she was subject to an adverse employment action; and (4) there is a causal nexus between that action and the protected activity. *Kemp v. Metro-N. R.R.*, 316 F. App'x 25, 26 (2d Cir. 2009). Under the NYCHRL, the elements of retaliation are "identical except that the plaintiff need not prove any 'adverse' employment action." *Leon v. Columbia Univ. Med. Ctr.*, No. 11-cv-08559 (NSR), 2013 WL 6669415, at *12 (S.D.N.Y. Dec. 17, 2013), *aff'd*, 597 F. App'x 30 (2d Cir. 2015). Instead, she need only demonstrate a "negative employment action" which disadvantaged her "in any manner." *Fattoruso v. Hilton Grand Vacations Co., LLC*, 525 F. App'x 26, 27 (2d Cir. 2013). Defendants argue that Plaintiff fails to allege facts which could plausibly satisfy the third and fourth elements of a *prima facie* case. (Def's. Mem. 13-14). They do not

appear to contest that the September 2016 Meeting and October 2016 Report were protected activities, or that they knew about those protected activities.

The adverse action requirement of the ADA and NYHRL is met by showing that "a reasonable employee would have found the challenged action materially adverse," for instance if it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 440 (E.D.N.Y. 2015) (citing *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006)). The NYCHRL's more lenient standard is met upon a showing "that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Leon*, 2013 WL 6669415, at *12 (internal quotation marks omitted).

The causal nexus requirement is satisfied either through direct evidence of animus, or "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir.2000). The plaintiff must "plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013)). In order to allege causation based solely on timing, the temporal proximity of the protected acts and the alleged retaliation must be "very close." *Vaughn v. City of New York*, No. 06-CV-6547 (ILG), 2010 WL 2076926, at *10 (E.D.N.Y. May 24, 2010) (quoting *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001)). While there is no bright line rule, "district courts in this Circuit have consistently held that a passage of more than two months . . . does not allow for an inference of causation." *Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 296 (E.D.N.Y. 2010); *see also*

*Gorman–Bakos v. Cornell Coop. Extension of Schenectady County,* 252 F.3d 545, 554 (2d Cir.2001) (collecting cases).

The complaint alleges that shortly after Plaintiff complained about her disability accommodations, Defendant Scarmato asked her to resubmit her medical documentation for review. (Compl. ¶ 34). That mere request could not plausibly amount to retaliation. However, it might be construed as the beginning of a process which culminated in the December 12, 2016 letter revoking all of Plaintiff's existing accommodations. (*See Id.* ¶ 46). The timing of Principal Scarmato's request therefore permits the inference of a causal nexus between the September 2016 Meeting and the December 12, 2016 Incident. Furthermore, the severity of Plaintiff having all her accommodations revoked in that letter rises to the level of a materially adverse action (and, necessarily, a negative employment action under the NYCHRL). *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (noting that the NYCHRL is a "one-way ratchet," by which interpretations of state and federal civil rights statutes serve only "as a floor below which the City's Human Rights law cannot fall").

The remaining allegations in the complaint, however, could not plausibly satisfy either the adverse/negative action requirement or the causal nexus requirement. Specifically, Plaintiff alleges that Defendants sent her disciplinary letters,[13] modified her work schedule,[14] subjected her to a

---

[13] The December 12, 2016 and February 17, 2017 disciplinary letters (*see* Compl. ¶¶ 47–49) are too remote in time to infer a causal nexus with the September 2016 Meeting or the October 2016 Report, and Plaintiff does not allege any facts which could plausibly give rise to but-for causation. *See Vaughn*, 2010 WL 2076926, at *10.

[14] Defendant Scarmato allegedly modified Plaintiff's schedule so that her teaching and preparation periods were no longer consecutive, thereby forcing her to share her classroom and engage in hall passing. (Compl. ¶ 36) ("The result was that she had to repeatedly vacate her classroom throughout the day, rather than just the last two periods of the day.") At most, this amounts to a trivial inconvenience commonly endured by teachers at the school. (*See* ECF No. 14-1 at 61) (noting that

3020-a investigation,[15] attacked her pedagogy and work performance,[16] denied her request for medical leave[17] and denied her access to school meetings and computers.[18] She may not argue disability retaliation on these grounds.

Accordingly, only one allegation—the December 12, 2016 Incident—could plausibly give rise to retaliation claims under the ADA, NYSHRL and NYCHRL. Plaintiff may rely on Defendant

---

such a large school "could not have accommodated a request of no hall passing or not sharing a classroom"). Accordingly, this could not plausibly constitute a materially adverse action, or even a negative employment action under the NYCHRL. *Clarke v. Pacifica Found.*, No. 07 CV 4605 FB, 2011 WL 4356085, at *18 (E.D.N.Y. Sept. 16, 2011) (noting that "the NYCHRL is not a general civility code and that petty slights and trivial inconveniences are still non-actionable under the law") (internal quotations and alterations omitted).

[15] In June and September of 2017, Plaintiff was served with 3020-a charges. (Compl. ¶ 58–60). Plaintiff cannot plausibly establish a causal nexus between these charges and the September 2016 Meeting or October 2016 Report. The 3020-a investigation culminated in a fairly and fully litigated proceeding, during which the hearing officer found ample basis for the charges. (ECF No. 14-1 at 61–65). Even if retaliation were somehow an additional motive, "[i]t is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." *Vega*, 801 F.3d at 90–91. Absent a showing of close temporal proximity (which does not exist here), Plaintiff must demonstrate but-for causation. *Id.* at 90; *see also Univ. of Texas Sw. Med. Ctr.*, 570 U.S. at 339.

[16] Plaintiff alleges that, in March or April of 2017, Defendants began "suddenly attacking her pedagogy and work performance." (Compl. ¶ 52). However, she does not provide specific accounts or dates of discrete "attacks." This threadbare and conclusory allegation cannot support a claim upon which relief could be granted. *See Ashcroft*, 556 U.S. at 678. Furthermore, allegations dating from March 2017 would be too remote to infer any causal nexus with the September 2016 Meeting or October 2016 Report. *See Hollander v. Am. Cyanamid Co.,* 895 F.2d 80, 85–86 (2d Cir.1990) (finding a three-month gap too distant to infer causation).

[17] On March 22, 2017, Defendants allegedly denied Plaintiff's request for FMLA leave. (Compl. ¶ 52). Plaintiff does not allege facts which might satisfy the but-for causation requirement, and the timing is far too remote from the September 2016 Meeting or October 2016 Report to infer a causal nexus. *See Hollander,* 895 F.2d at 85–86.

[18] Beginning in September 2017, Defendants allegedly refused to let Plaintiff attend school-related meetings and revoked her computer login credentials. (Compl. ¶ 59–66). The timing is too remote from the September 2016 Meeting or October 2016 Report to infer a causal nexus based solely on temporal proximity, and Plaintiff does not allege any facts which could plausibly give rise to but-for causation. *See Hollander,* 895 F.2d at 85–86.

Scarmato's September 9, 2016 request for medical documentation as background to establish a causal nexus, but it is not itself an allegation of retaliation.

## IV.  Statute of Limitations (Claims IV, V and VI)

No action may be commenced against the DOE "more than one year after the cause of action arose." N.Y. Educ. Law § 3813(2-b). Plaintiff commenced this action on March 12, 2018. Accordingly, all state and city law claims premised solely on incidents prior to March 12, 2017 are time-barred, to the extent brought against the DOE. However, they are not time-barred as to Defendant Scarmato: while § 3813(2-b) also applies to school officers, "a school principal is not a school officer, as defined by the Education Law." *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 312 (E.D.N.Y. 2014) (Spatt, J.).

The December 12, 2016 Incident is the only remaining allegation on which Plaintiff could rely to prove her discrimination and retaliation claims under the NYSHRL (Claim IV) and NYCHRL (Claim V). *See* Parts II and III, *supra*. Claims IV and V are therefore time-barred as to Defendant DOE, as is Claim VI for the reasons stated in Part VI, *infra*.

## V.  First Amendment Retaliation (Claim III)

The complaint alleges that Defendants retaliated against Plaintiff for engaging in union activity, thereby violating her First Amendment rights. (Compl. ¶ 82). A public employee alleging First Amendment retaliation under 42 U.S.C. § 1983 must show that: (1) she engaged in constitutionally protected speech; (2) she was subjected to an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action. *Morrison v. Johnson*, 429 F.3d 48 (2d Cir. 2005).

Defendants move to dismiss this claim on the basis that Plaintiff's union activity was not constitutionally protected speech. (Def's. Mem. 17). "[W]hile the First Amendment invests public

15

employees with certain rights, it does not empower them to constitutionalize [their] employee grievance[s]." *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006). Accordingly, a public employee's speech is protected only to the extent that it regards matters of actual public concern. *See Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 201 (2d Cir. 2010) (affirming this principle in the context of union grievances by public school teachers).

Most of the union activity described in the complaint cannot be characterized as constitutionally protected speech. For instance, on October 6, 2015, Plaintiff filed a grievance regarding a violation of teachers' contractually-mandated professional administrative period. (Compl. ¶ 26). On October 7, 2015, she filed a grievance regarding the school's creation of an administration position that violated the union's contract. (*Id.* ¶ 27). On November 13, 2015, she filed a grievance against the administration regarding an arrangement that resulted in certain teachers allegedly having to work before their collectively bargained work hours. (*Id.* ¶ 28). These are internal employer/employee disputes, not matters of public concern.

On February 28, 2017, Plaintiff filed a report with a city watchdog agency alleging attendance manipulation, grade changing, and credit manipulation by the school administration ("February 2017 Report"). (*Id.* ¶ 51). The public entrusts the city's schools with the education of its children, and thus has an overwhelming interest in whether those schools are honest in their reporting of attendance, student performance, and financial data. The February 2017 Report is therefore constitutionally protected speech.

However, Plaintiff fails to plausibly allege that she experienced an adverse employment action motivated by her filing of this grievance. In the First Amendment retaliation context, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Zelnik v. Fashion Inst. of*

16

*Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (internal quotation marks omitted). None of the allegations

described in the complaint as occurring after February 28, 2017 satisfy this high bar. Consider, for

instance, Defendants' refusal to grant her request for FMLA leave. (Compl. ¶¶ 50, 52). The FMLA

provides its own statutory remedies for leave requests which are wrongly denied. 29 U.S.C.

§ 2615. A person of ordinary firmness would be expected to exercise those remedies, rather than

be chilled from exercising her free speech rights. Furthermore, allegations that Defendants began

"suddenly attacking her pedagogy and work performance" (Compl. ¶¶ 53) are too threadbare and

conclusory to be given any weight. *See* note 19, *supra*. All other allegations of retaliation are too

remote in time to warrant any inference of causation, and Plaintiff "provides no direct evidence of

this otherwise missing link to maintain her claim." *Ren Yuan Deng v. New York State Office of

Mental Health*, No. 13 Civ. 6801(ALC), 2015 WL 221046, at *15 (S.D.N.Y. Jan. 15, 2015).

Claim III, for First Amendment retaliation, is therefore dismissed.

## VI.  New York Civil Service Law § 75-b Retaliation (Claim VI)

Plaintiff alleges that Defendants violated NYCSL § 75-b by retaliating against her for filing

the October 2016 and February 2017 Reports. (Compl. ¶¶ 98–102). That law provides, in relevant

part:

> A public employer shall not dismiss or take other disciplinary or other adverse
> personnel action against a public employee regarding the employee's employment
> because the employee discloses to a governmental body information: (i) regarding
> a violation of a law, rule or regulation which violation creates and presents a
> substantial and specific danger to the public health or safety; or (ii) which the
> employee reasonably believes to be true and reasonably believes constitutes an
> improper governmental action.

N.Y. Civ. Serv. Law § 75-b(2).

Accordingly, in order to state a claim under § 75–b, the plaintiff must allege: (1) an

adverse personnel action; (2) the disclosure of applicable information to a governmental body; and

(3) a causal connection between the disclosure and the adverse personnel action. *See Portelos v. City of New York*, No. 12-CV-3141(RRM)(VMS), 2013 WL 789460, at *2 (E.D.N.Y. Mar. 1, 2013); *Burns v. Cook*, 458 F. Supp. 2d 29, 44 (N.D.N.Y. 2006). A "personnel action" is one which affects the plaintiff's "compensation, appointment, promotion, transfer, assignment, reassignment, reinstatement or evaluation of performance." N.Y. Civ. Serv. Law § 75-b(1)(d).

As an initial matter, "claims under § 75-b cannot be maintained against individual public employees." *Eyshinskiy v. New York City Dep't of Educ.*, No. 15 CIV. 10027 (DLC), 2016 WL 7017414, at *2 (S.D.N.Y. Dec. 1, 2016), *aff'd sub nom. Eyshinskiy v. Kendall*, 692 F. App'x 677 (2d Cir. 2017). Claim VI is therefore dismissed as to Defendant Scarmato.

Furthermore, any state and city law claims against the DOE are time-barred if premised on retaliatory acts occurring prior to March 12, 2017. *See* Part IV, *supra*. Two of the allegations occurring after March 12, 2017—Defendants' denial of FMLA leave and attacks on her pedagogy and work performance—cannot plausibly be construed as adverse personnel actions.[19] (*See* Compl. ¶¶ 52, 53). The remaining allegations, which date from June 23 through November 17, 2017, are too remote in time to infer a causal relationship with the October 2016 or February 2017 Reports. (*Id.* ¶¶ 58–61, 64). Accordingly, Claim VI is also dismissed as to Defendant DOE, and therefore in its entirety.

---

[19] Plaintiff insists that she "clearly suffered an adverse personnel action, as she faced an increasingly hostile work environment from [the] school administration after years of consistently positive evaluations and praise." (Pl's Opp'n 18). This argument overlooks the narrow definition of "adverse personnel action" set forth in the statute: an act which affects Plaintiff's "compensation, appointment, promotion, transfer, assignment, reassignment, reinstatement or evaluation of performance." N.Y. Civ. Serv. Law § 75–b(1)(d). Defendants' alleged denial of FMLA leave (Compl. ¶ 52) does not fall into this category. Nor does the allegation that Defendants began "suddenly attacking [Plaintiff's] pedagogy and work performance." (*Id.* ¶ 53). Even if such attacks could be construed as formal "evaluations," Plaintiff's allegation is too vague and conclusory to be afforded any weight. *See Ashcroft*, 556 U.S. at 678.

## VII.  Intentional Infliction of Emotional Distress (Claim VII)

Claim VII alleges intentional infliction of emotional distress, presumably under New York law. (*Id.* ¶¶ 98–102). To prevail on such a claim, Plaintiff "must plead four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir.1996) (citing *Howell v. N.Y. Post Co.,* 81 N.Y.2d 115, 121, 612 N.E.2d 699 (1993)). This is a very strict pleading standard. *Ahmed v. Gelfand*, 160 F. Supp. 2d 408, 416 (E.D.N.Y. 2001). Liability is found only for conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bender*, 78 F.3d at 790–91.

The complaint alleges nothing of the sort. Instead, it asserts that "Defendants engaged in extreme and outrageous conduct with intent to cause severe emotional distress." (Compl. ¶ 99). Plaintiff concedes that this fails to meet the "high standard" for pleading an IIED claim. (Pl's Opp'n 19). Nonetheless, she "respectfully requests that [the IIED] claim be deferred for factual development in this matter." (*Id.*). Entertaining such a request would be incompatible with Rule 12(b)(6). In deciding a motion to dismiss, the Court cannot accept such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft*, 556 U.S. at 678. Claim VII is therefore dismissed.

## VIII.  Hostile Work Environment (Unpled Claims)

The complaint does not assert a discrete claim for hostile work environment. However, Plaintiff asks this Court to construe the complaint as alleging hostile work environment claims under the ADA, NYSHRL and NYCHRL. (Pl's Opp'n 14). Such "unpled" claims may survive

19

12(b)(6) scrutiny if Plaintiff alleges the requisite facts in the complaint. *See Lebowitz v. New York City Dep't of Educ.*, 407 F. Supp. 3d 158, 181 (E.D.N.Y. 2017).

The elements of a hostile work environment claim are identical under the ADA and NYSHRL. *Lebowitz*, 407 F. Supp. 3d at 181. The plaintiff must show that the workplace is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014). The standard is more permissive under the NYCHRL. The plaintiff need not show that the conduct was "severe or pervasive," only that she "has been treated less well than other employees because of [her disability]." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).

The complaint does not allege facts showing that Defendants and others at the school repeatedly permeated her workplace with severe and pervasive intimidation, ridicule and insult. Nor does it satisfy the more permissive NYCHRL pleading standard. Read in the most favorable light, the complaint plausibly alleges that Plaintiff was treated less well than other employees (*see, e.g.,* Compl. ¶¶ 36, 52, 61, 63 64, 65), but not "because of" her disability. *See Mihalik*, 715 F.3d at 110. Indeed, Plaintiff clarifies her theory of hostile work environment in her opposition memorandum: that the school administration "engaged in a campaign to make her life miserable after she became chapter leader with a series of hostile actions against her[.]" (Pl's Opp'n 14). Taken at face value, Plaintiff does not believe she was treated less well because of her disability, but rather because of her activities as union chapter leader.

Accordingly, the complaint fails to state hostile work environment claims under the ADA, NYSHRL or NYCHRL for which relief could be granted. These unpled claims are therefore dismissed.

## IX.    Notice of Claim Requirements (Claims IV–VII)

Defendants move to dismiss any remaining state and city law claims, for failure to comply with notice of claim requirements. (Def's. Mem. 21). N.Y. Educ. Law § 3813(1) requires that plaintiffs file a notice of claim prior to any action against a school district or its officers, to be presented within three months of the date when the claim arose. Section 3813(2) of the same requires the filing of a notice of claim prior to a tort action against the city or its employees, to be presented within ninety days of the date when the claim arose. The plaintiff must allow thirty days to elapse after the notice is filed before filing a complaint, and show that in that time period the defendant has either neglected or refused to satisfy the claim. N.Y. Educ. Law §§ 3813(1), (2). These requirements are "construed strictly," and so "failure to abide by their terms mandates dismissal of the action." *Smith v. New York City Dep't of Educ.*, 808 F. Supp. 2d 569, 578 (S.D.N.Y. 2011).

The only remaining state and city law claims are for failure to accommodate and retaliation under the NYSHRL (Claim IV) and NYCHRL (Claim V). They remain only as to Defendant Scarmato, and may only be premised on the December 12, 2016 Incident. *See* Parts II, III and IV, *supra*.

Plaintiff's notice of claim does not comply with § 3813(1) or § 3813(2). It was filed on February 26, 2018 (ECF No. 14-2), more than a year after the December 12, 2016 Incident, and over one hundred days after the last allegation contained in the complaint. (*See* Compl. ¶ 64). It references claims under the ADA, N.Y. Civ. Serv. Law § 75-b, and 42 U.S.C. § 1983, but makes

no mention of claims under the NYSHRL or NYCHRL. (ECF No. 14-2). Furthermore, Plaintiff filed her complaint in this Court on March 18, 2018, before the requisite thirty day waiting period had elapsed.

Given these deficiencies, it might therefore appear that all remaining state and city law claims should be dismissed. However, a notice of claim is not required to bring a NYSHRL or NYCHRL cause of action against a school principal. N.Y. Educ. Law § 3813(2) is narrower than § 3813(1) "in that it only applies to claims founded upon tort," but it is broader than § 3813(2) "in that it is not limited to claims against school districts and their officers." *United States v. New York City Dep't of Educ.*, No. 16-CV-4291 (LAK), 2017 WL 1319695, at *1 (S.D.N.Y. Apr. 4, 2017). Claims IV and V against Defendant Scarmato fall outside the scope of these imperfectly overlapping statutes, and are therefore not subject to notice of claim requirements.

Claims IV and V against the DOE, dismissed on other grounds in Part IV, *supra*, are dismissed in the alternative for failure to comply with notice of claim requirements.[20] They fall within the scope of § 3813(1), which applies to all claims against a school district or its officers.

---

[20] Courts in the Second Circuit are divided on whether a notice of claim is required for Human Rights Law claims against the DOE. *Compare Caputo v. Copiague Union Free Sch. Dist.*, 218 F. Supp. 3d 186, 193 (E.D.N.Y. 2016) (Hurley, J.) ("A notice of claim for a NYSHRL claim *against a school district* or its personnel is not required.") (emphasis added) *with New York City Dep't of Educ.*, 2017 WL 1319695, at *2 (Kaplan, J.) ("[E]ven if NYSHRL claims do not require a notice of claim under [§ 3813(2), this] . . . has no bearing on whether the same is true of [§ 3813(1)]. Thus, I respectfully disagree with *Caputo*."). This split arises from conflicting readings of the New York Court of Appeals' decision in *Margerum v. City of Buffalo,* 24 N.Y.3d 721 (2015). However, a close reading of *Margerum* and § 3813 confirms Judge Kaplan's interpretation. *Margerum* stands for the proposition that human rights law claims are not "founded upon tort," and therefore are not governed by the notice of claim requirements set forth in § 3813(2). *Margerum,* 24 N.Y.3d at 730. *Caputo* overgeneralizes the holding in *Margerum*, to say that claims under the NYSHRL and NYCHRL are not subject to *any* notice of claim requirements, including those found in § 3813(1). *Caputo*, 218 F. Supp. at 193.

Also dismissed in the alternative are Plaintiff's claims for retaliation under NYCSL § 75-b (Claim VI) and for intentional infliction of emotional distress (Claim VII). These are tort claims, and are therefore covered by § 3813(2). *See Griffin v. City of New York*, 880 F. Supp. 2d 384, 406 (E.D.N.Y. 2012).

## CONCLUSION

Defendants' motion to dismiss is DENIED as to Defendant DOE with respect to Claims I and II,[21] and as to Defendant Scarmato with respect to Claims IV and V. The motion is GRANTED with respect to all other claims.[22] Plaintiff may only rely on the December 12, 2016 Incident as the basis for the remaining claims.

SO ORDERED.

Dated:  Brooklyn, New York
        May 20, 2020

/s/ _____
I. Leo Glasser                U.S.D.J.

---

[21] Claims I and II were brought against Defendant DOE only. (Compl. ¶¶ 67–80). All other claims were brought against both Defendants. (*Id.* ¶¶ 81–102).

[22] Plaintiff requests permission to amend her complaint upon the Court granting any portion of Defendants' motion to dismiss. (Pl's Opp'n 20). The Court makes no determination at this time as to whether leave to amend would be proper. A request to amend should be made by motion pursuant to Fed. R. Civ. P. 15, with the proposed amendment attached. *See State Trading Corp. of India Ltd. v. Assuranceforeningen Skuld,* 921 F.2d 409, 418 (2d Cir.1990) (imputing a lack of good faith to plaintiff in part because plaintiff "did not file a proposed amended complaint" when it sought leave to amend); *Gulley v. Dzurenda*, 264 F.R.D. 34, 36 (D. Conn. 2010) ("To obtain leave of court to amend the complaint, a party should file both a Rule 15 motion and a proposed amendment or new pleading.").